is the last case of the day. 19-2635 from the District of South Dakota, United States v. Jonathan Figueroa-Serrano. Mr. Dean, can you hear me? Yes. Very good. And Ms. Larson, can you hear me? Yes, I can. Great, thank you. May it please the court. We're asking your attention to the following two cases. The first is a felony suppression denial based on two grounds. The first ground is that the plain view exception did not justify the seizure of the gun here. And that's because its incriminating nature was not immediately apparent when the officers seized it. Not under South Dakota's law against committing a felony while armed with a firearm, not under South Dakota's law against carrying a concealed pistol without a permit, and not under the federal drug user in possession statute. The second ground for reversal is that the officers here violated Jonathan's Miranda rights. On this ground, three sets of statements are suppressible. First, Officer Morgan arrested Jonathan on the night of his arrest, but he did not Mirandize him right away. And in that time span, he elicited statements from him. Second, after the advisory the night of his arrest, Jonathan made a statement, but his Miranda waiver was ineffective, in large part because when Officer Morgan gave the Miranda advisory, he did so in a speed recited and jumbled manner. Third, weeks later, Agent Scherer elicited a Mirandized confession from Jonathan. This waiver was also invalid, in large part because Agent Scherer conducted the interview over the telephone, so he could not verify if the waiver was fully valid. And Jonathan testified, relevant to both waivers, that he had never understood his Miranda rights, and the district court did not find that Jonathan lacked credibility. There was no credibility finding by the court. On this record, we would ask the court to reverse. And I'm going to jump into the First, the South Dakota statute prohibiting committing a felony using a firearm did not justify the seizure under plain view. And that's because of the State v. Kerr case, where the South Dakota Supreme Court concluded that the mere simultaneous possession of user amount drugs and a gun does not trigger this statute, is not a crime in South Dakota. So violating the statute when they seized the gun. And under South Dakota's prohibition against carrying a concealed pistol without a permit, which has now been repealed, the officers also did not seize the gun validly under this law, and that's because of the Eighth Circuit's Lewis case, cited in the briefs. Just like there, here when the officers seized the gun, they had no clue one way or the other about whether Jonathan had a permit, just like in Lewis, the officers had no clue if the defendant was a felon. So under the Lewis case, this statute did not justify the seizure of the gun. And also the gun was just in a gun case in the backseat. And although there didn't appear to be much case law in this, I would submit that does not constitute concealment. Third, the federal drug user and possession statute also did not justify the seizure of the firearm under plain view. Now, the statute doesn't define what it means by drug user, but this court has, and courts within the Eighth Circuit have, and I think the most comprehensive definition comes from the persuasive case of Greywater in the District of North Dakota, written by Judge Erickson, which defined the term as, quote, the defendant took drugs with regularity over an extended period of time, contemporaneous with the firearm possession. And the Eighth Circuit has used a similar definition, though much more sparsely worded, mainly in the Turnbull case, requiring, quote, regular drug use. At the time that the officers seized the gun, it was not immediately apparent to them that Jonathan was violating the statute. And I would like... What would it take? Because there's one thing to look at the cases where we sort of grapple with this trial, but we're at a different stage here where you're just seeing whether it's immediately apparent that this could be a violation. What would be necessary in that context as compared to a full-blown jury trial context? Right. The standard is different, as you say, and I guess what I would say is that the fact that this is a probable cause determination instead of a sufficiency of the evidence determination, it is a difference, but I don't think it matters that much because what we're asking is what facts trigger this statute? Well, what facts are missing here? So you've got that there are, that there's the watery eyes and the drug use, correct? What else? You're saying that that's not enough, as I understand your argument, that that's not enough to make it readily or immediately apparent that a violation may have occurred. What more would there need to be in that scenario, in your view, to make that immediately apparent? Right. I would direct the court's attention to the Eighth Circuit's Barnard case that we cited in our 28J letter. That was also a plain view seizure of ammunition under the federal drug use and possession statute in a home, and there the facts were worse than here, where the defendant had a meth pipe in his upstairs, and then downstairs, close to the ammunition, he had marijuana, the quantity of which was unstated. He had a baggie of white substance, the quantity of which was unstated, and he admitted to the officers contemporaneous to the seizure of the gun, not that he used marijuana a half hour before one time, but that he was a user of marijuana, tracking the turnbull definition. And that was a plain view seizure case. The facts here are that Jonathan had a user amount of marijuana wax in his vehicle, some paraphernalia, and he told the officer that he smoked after the gun seizure, but contemporaneous to the facts are much less onerous than the ones in Barnard, where the defendant admitted to just being a user, not using one time. Well, not only that, but you also had the smell of marijuana to the officers on top of it. So I'm just trying to figure out if probable cause is an honest and reasonable suspicion. In light of everything you told us just now, that seems like it creates an honest and reasonable suspicion that he was a drug, you know, that he'd used drugs. And my understanding is, you just have to use it regularly or recently. And in fact, we have, we've approved a jury instruction that talks about actively engaged in it. That would seem to be enough. Your Honor, what I would direct the court's attention to, to compare this case to in light of your question, is a case that we cited in our briefing called the United States versus Augustine, which is a Third Circuit case, where the Third Circuit held that evidence was insufficient under this statute, under similar facts to here, where the defendant admitted using marijuana the day before, instead of an hour before, and the other witnesses testified that he used, and he testified that he, or he admitted that he possessed a firearm a day later. And his use would have necessarily entailed some possession of a user amount and some kind of paraphernalia. And those facts are similar to here. And the Varner case is worse, where the defendant admitted to using regularly. And we would submit a case that's closer to the Augustine case. The Third Circuit case, is that, you said sufficient, that the evidence was not sufficient. Was that sufficiency of the evidence or probable cause? That was, it was a sufficiency case. And I use it just by analogy. But I, I don't make, yes? Can I? Yes. There is some evidence in this record scan that there was other use, right? Because he's sitting in the back of the car during the course of the interview, and the officer says, are you high? And there's kind of no response. Are you high? You know, I used a while ago, but I don't really, I'm paraphrasing because I don't have it memorized, right? But he says, yeah, I used a while ago, but I don't feel high. I'm, you know, I probably am, but I don't feel high. I use marijuana regularly or something like that. And then he doesn't object. He doesn't say anything, you know, I mean, and ordinarily, you know, one might infer that if you're, if you're a guy who doesn't regularly use marijuana, you might object it. And it's, that may be some evidence. Yeah, I mean, I would agree that that, that, that is a consideration, what Your Honor just mentioned. And I would agree with your summarizing of the record here. That is relevant, but we would still say this is closer to Augustine than Varner. And I'd like to make an additional point here too. And this is from the Varner case and the Blum case, the Eighth Circuit cases cited in our 28J, where in those cases, the Eighth Circuit did look to whether the officers subjectively knew about the federal statute at issue, or at least whether they reasonably or whether it was likely that they knew. So in this case, there's nothing in the record that's showing that the officers had any awareness whatsoever of the obscure federal drug use and possession statute. So under the Blum and Varner cases, we would say that it was not immediately apparent to these officers that Jonathan was violating this obscure federal statute when they seized the gun, even if it was theoretically, even if it wasn't theoretically, is relevant to determine this probable cause determination. In other words, they got some additional information from him in the squad car. Do you consider that in terms of whether or not the initial, immediate apparent analysis is supportable? I'm curious what your thoughts are on that. Your Honor, I think that as long as it's reasonably contemporaneous to the seizure, I think that the court could consider those statements because the physical fruits of a Miranda violation are not suppressible. But still, the record doesn't show that the officers had any awareness of the statute. So we can say that plain view still did not justify the seizure in any event. And on a Miranda basis, I think that the court could consider those statements because the officer had already seized the gun and then asked him some further questions. And your position is because those questions or that information they got from him shortly thereafter, that that can be used to support the immediate apparent criminal nature of this possession? What I said is that as long as those statements were reasonably contemporaneous, so while they're still on the scene, those statements could be considered. But while they're already driving back to the jail and he's discussing the marijuana wax, I think that that might be a little too far after the fact. But that would be up to your honors to decide. And on that very issue, the Miranda issue, when Officer Morgan arrested Jonathan, he did so at about the 16 minute mark of the squad video. But he did not Mirandize him for 12 minutes. In that 12 minute span, he elicited three statements from Jonathan. And one of those was in the back of the squad car about the nature of wax marijuana. And the government in its trial court suppression briefing stipulated that that violated Miranda. And we would submit that the logic of that concession applies just as much to the other pre-Miranda statements. You know, when we look at those in isolation, and that's that's a big point for me. You have these statements that are inadmissible. And, you know, you can make a fruit of the poisonous tree type argument. But as for those statements, because it's a guilty plea case, right? So this would have been something your client would have known at the time he pleaded guilty. So we can kind of at least take those statements in isolation off the table, correct? Yes. Yeah. If I'm understanding your question, correct. Yeah. In other words, fruit of the poisonous tree. We'll, you know, we'll deal with the later statements. But the earlier statement, it was clear to your client that those were inadmissible when he pleaded guilty. Just to be sure we're on the same page. Yes. Yes. You're welcome. Yes. And I would reserve the remainder of my time for rebuttal if I may. You may. Thank you. Thank you. Ms. Larson. Thank you, Your Honor. May it please the court. My name is Connie Larson. I work for the United States District Attorney's Office in the District of South Dakota. And I thank you for your time today. We are here respectfully requesting that the court affirm the district court's decision, which denied motions to suppress both of the firearm physical evidence that was seized and the statements made. There is simply no clear error on this record in the judge's decision. I will briefly go over the facts. I know we're talking about probable cause. So I'll briefly point out some of the relevant facts. I know the court is familiar with them. We're talking about an early morning, 1.45 a.m. traffic stop in January of 2018. The traffic stop was no longer challenged. When the deputy saw the traffic violation and turned around, the defendant here, Mr. Figueroa Serrano, immediately pulled into what he said was his friend's residence, a known drug user to one of the officers who was at the scene. The officer approached the driver. He noted the smell of marijuana. To isolate it, he brought the driver to his car, smelled it again. There was consent to search a glove compartment. He went up and did that and confirmed the odor of marijuana, which resulted in the search of the vehicle. In the back of the vehicle, there's marijuana paraphernalia showing concurrent use. So we have what I would say is the prior use, which is why the defendant smells of it and appears to have used. Then we have evidence of continuing use, which is the drugs that were found, the torch that was found, the pipe that was found. So we have all of those items that were found along with this concealed weapon. I guess I'd take issue that something in a black bag on the floorboard in the backseat of a vehicle, I don't know how you conceal it. There are probably ways better than that. But as is pointed out in the Hatton case, the court took that into consideration there and said, even a poorly concealed firearm is incriminating by its very nature because they're trying to conceal it. So given all those things, the defendant was arrested. He did provide a urine sample that was positive for marijuana. He was interviewed and he was interviewed fully, following a Miranda advisement, and then he was interviewed again over the phone, following another Miranda. Both of those involved him having a full discussion, and it doesn't take very long into those discussions with the officers to understand the defendant knows what's going on. He's having a knowledgeable discussion with the officers, and I realized that he testified with simple yes or no, that he never understood his Miranda advisement, but he didn't give any specifics as to what he didn't understand. And when he was asked about the specifics of the Miranda advisement, he indicated, well, he understood that part and he understood that part. And so it's difficult to understand what part of it he didn't understand, and he certainly didn't make his record better. We did have the motion to suppress a couple of notes from the district court opinion. One, he noted that the facts in law are clear, that the traffic stop was valid and the search was based on probable cause. That doesn't seem to be an issue before this court that was raised before this court. There is no question that the search of the bag containing the firearm was valid. Again, not an issue before this court. And then it is clear that the illegality of the possession of the firearm was readily apparent. That is an issue presented before this court. So I'd like to talk a little bit about plain view, and I think the only portion of plain view that's an issue is whether the firearm's incriminating nature is immediately apparent. A couple of things. Let's talk a little bit about what it means to be immediately apparent. And I know the court is aware of that, but then we're back to the probable cause standard. Not a beyond a reasonable doubt standard, but that probable cause standard, which is fluid in concept. So you have officers on the side of the road making decisions about things that intuitively and probable cause follow. Is this incriminating? Is this evidence of contraband? Is this useful as evidence of a crime? All those things in the Muhammad case. In that case, in the magistrate court addressed Muhammad, under these circumstances was used, what was found on the defendant was cash. Well, cash in and of itself is not incriminating necessarily, but then it's the under these circumstances. So we're back to all those facts that we were just talking about. It's early, very early morning hours. The attempt to avoid the officer, the smell of marijuana in the car, the marijuana wax, the marijuana smoking paraphernalia. Those were also hidden in the car. The officers, I believe, didn't take that bag, but they were concealed in a duffel bag in the car. So certainly those factors taken together and taken as a whole do lead the officers to have probable cause to seize that gun and to continue the investigation, which is what they did. Do we do we look at what they knew at the time they seized right at the moment they seized the gun? Well, I think you can look at more than that, but I do think they had enough when they seized the gun. You have an individual who is actively smelling of marijuana. There are drugs. I know there are eight circuit cases that indicate that guns and drugs kind of go hand in hand for sentencing enhancement purposes that has been addressed. When you say the drugs, just so I understand what you're talking about, I know they smelled the burnt marijuana, which would suggest recent use in that location. And I think they said he had watery eyes maybe as well. Did they have any other in any did they know about anything else in the car at that point when they took when they seized the gun? Well, I would have also found the drugs themselves. Is that what the court is asking? Yeah. So you're saying they had they knew about the drugs in the car. I'm trying to get a timeline of their knowledge of what they had. So we have an understanding of how much they knew to see whether it reached a level of probable cause, whether it looks like the criminal nature of this gun would be immediately apparent. My recollection of the testimony is that two officers were searching two different sides of the car. One officer found a gun on the floorboard in the bag on one side of the car, while the other officer is searching the duffel bag that contains the marijuana wax and the paraphernalia. So specifically, I don't know whether the record was clear on timing, but certainly before they seized the firearm and took it with them to the to the law enforcement detention center, they would have known those things. And I do think you get to consider. I think the investigation gets to continue. And I think you get to ask further questions. The officers get to ask further questions. And I think they get to consider that evidence as well. When we're talking about charging or other issues. I'm sorry. I see Judge Erickson shaking his head. So I thought you were ready to ask me a question. I think you're muted. Yeah, there you go. Yeah. Judge Erickson, I think that you need to unmute your microphone so that we can hear your great question. All right. That would be a reason why you couldn't hear me. Sorry about that. Sorry about wasting your time being on mute. So we'll have to give you that back. But in any event, I get the idea that we have two officers, they're searching this car, they've got the bloodshot eyes, they find the drugs, they find the gun. And I'll set aside the concealed part myself, because I think if it's a SIG Sauer bag with a gun in a case inside a gun bag that that's, you know, if that's concealing, I'm not really, I mean, it's happening every day in every street in North Dakota, if it's just hanging out on the backseat of a car, but whatever that may be. Once you've got the drugs, once you've got the gun, once you've got the guy using the drugs, isn't that enough just to get you to probable cause where we can like seize these items, which may be contraband until we get it all sorted out? I believe it is, Your Honor, and that's our position here. Right. And so all the niceties about what the South Dakota statute says exactly and how it's been interpreted doesn't really end the investigation. And so once you've grabbed the bag and the gun in it, their argument is essentially that you can't remove it because it's not apparent that it's criminal to possess that gun because you haven't got the elements all nailed down for the crime. But you do have some evidence towards every element of the offense of being an habitual drug user and in possession of a firearm, right? I mean, you've got paraphernalia in a quantity that would suggest that you're, that you're, it may not be enough to get the proof beyond a reasonable doubt, but it's enough to get the probable cause because paraphernalia would say this person's not using this dope for the first time because there's multiple items and the way that it's set up and, you know, a reasonable officer could draw reasonable inferences that marijuana wax is not readily used by a first time user and all those sorts of things. And at that point, really, you've got what you need. Now, they're saying that, no, you need some other evidence that they knew sort of beyond that, that there's an habitual user. So why are they wrong? Well, Your Honor, because I think for exactly the reasons the court has pointed out, we're not at trial. We're at probable cause. And again, we're back at that fluid concept. We're talking about law enforcement officers who are seeing and perceiving things as they go and experienced law enforcement officers who have done some drug investigation. And I think their perceptions and their conclusions on the side of the road were the right ones that night. They see all these things. It adds up to you've got drugs. Let's keep the investigation going. So I do think they get to seize those. So I guess I'd argue that's why they're incorrect in that assertion. I think I will move on then to the Miranda issues. As I indicated, the defendant certainly was read Miranda. He was read Miranda twice. He was specifically asked the first time whether he would waive the second time. He wasn't. But as the court knows, he doesn't have to be asked if he'd waive it to continue the conversation in both of those cases. And again, it doesn't take very long of listening. The defendant's an intelligent young man. He's articulate. He wasn't having trouble responding to questions. He wasn't answering anything that led anyone to believe he was an influence or had any other issues going on that would lead him to be unable to waive that Miranda. And so we believe that the district court's decision in that is also supported. I want to follow up on the question I asked the opposing counsel, which is you have a period of time in which the defendant made several inculpatory statements. And I think the argument is, yes, he knew that when he pleaded guilty. But these led to fruit of the poisonous tree. In other words, even if he was properly Miranda later, a lot of the statements he may have made later were directly attributable to these earlier statements. The earlier things he had already admitted. Could you kind of at least I think I'm understanding that argument. Could you address that for me? I guess my argument on that would be you do have a bit of a break in custody. And I don't know if you've had the chance to look at the video. It's frustrating to move it five minutes at a time. But there's a break where he is by himself waiting for the officers to come. At any point he could have changed his mind at any point. And it was presented by the officers as here's an opportunity to help yourself out. But after Miranda, they had that discussion with him. And again, Miranda is not a concept that he was unfamiliar with. So I guess based on all the circumstances in this case, under these facts, I do believe that there was a waiver. Just from a fairness point of view, I'm gonna I'm gonna press you on that a little bit. Because, you know, I mean, I understand he might have been somewhat sophisticated and smart. But the fact of the matter is, if I if I were to say a bunch of inculpatory things, right, and then I later get Miranda eyes, I'm thinking to myself, great, they just Miranda eyes me, but I already let the cat out of the bag, right? I've already said all these things that are really inculpatory. And so therefore, you might be more willing to share more. I mean, I just kind of throw that out as the counter argument. And I see what you're saying. I do think if you listen to the statements in the patrol car, they were inculpatory, but it's not that he gave up a lot of knowledge, they had a kind of back and forth discussion, the officer said, I don't understand what marijuana wax is used for. We're just sort of having a discussion about drug use. So there were some statements made, but I don't know that there was anything that was I buy it here, I used it there, those sorts of things that kind of found themselves. If there are no further questions, I have no further statements. Thank you, Mr. Dean. I think you have some rebuttal. Yes. I'd like to address the Miranda issue. And I, I would agree with Judge Strauss, your suggestion. When Jonathan is initially arrested, and then the officer elicits statements from him without a Miranda warning, those clearly violate Miranda, and he makes admissions, and then he later makes admissions after an advisory. And kind of similar to an LSAT CBER two-step interrogation technique, the fact that he had already had his Miranda rights violated, and then made statements, I think that's a relevant consideration in determining whether his waiver was valid. And on that night, another relevant consideration is that when Officer Morgan gives the advisory, he does so in a speed recited and jumbled manner, like an auctioneer or an infomercial warning. And I don't know if your honors had a chance to watch that, but when I did, I had to rewind it and pause it multiple times to make sure that what he was saying was correct. It was difficult to understand. And I think that that is a significant consideration in determining whether Jonathan's Miranda waiver that night is valid. Also significant is the fact that he testified he never understood his Miranda rights. And the district court did not find that he lacked credibility. The magistrate judge did not find that he lacked credibility. So on this record, the government has failed to prove that that waiver the night of his arrest was valid. And as far as the Scherer interview goes, the government also failed to prove that waiver was valid. Similar, Jonathan testified that he never understood his Miranda rights. And he was specific. He said he did not understand that he could refuse to speak, that he could stop at any time. He did not understand that he could have the assistance of a lawyer. And he said that he simply did not understand his rights. And the court did not find that lacked credibility. And Agent Scherer conducted the interview over the phone. The corrections officer who was present with Jonathan did not testify. So the government failed to prove that that waiver was valid as well. So we'd ask the court to reverse. Thank you. Thank you, Mr. Dean. Thank you to both counsel for your arguments today. They were very helpful. And we will take the matter under advisement.